## Bertram, Administrator v. Jones.

(Decided November 25, 1924.)

### Appeal from Wayne Circuit Court.

1. Mines and Minerals—Liability for One-Half of Purchase Price of Interest in Oil Leases, Held Properly Submitted to Jury.—In suit to recover one-half of purchase price of an interest in oil leases, of which plaintiff claimed to be part owner, liability of defendant's intestate held properly submitted to jury.

2. Mines and Minerals—Law Held to Imply Promise by Defendant Receiving Consideration for Sale of Interest in Oil Leases to Pay Plaintiff One-Half Thereof.—Where, by contract, consideration for purchase of an interest in oil leases was payable to plaintiff and defendant, as sellers, if they were joint owners, and entire consideration was paid to defendant or to others for his benefit, law implied promise by defendant to pay plaintiff his one-half of consideration.

3. Executors and Administrators—Resident of Ohio Held Entitled to Maintain Action Against Kentucky Administrator of Nonresident Debtor's Estate.—Resident of Ohio, despite Kentucky Stat-

utes, sections 3898, 3899, could sue Kentucky administrator of debtor's estate, though administrator was appointed in Indiana where debtor resided who had sufficient assets to discharge plaintiff's claim, in view of Constitution, U. S., article 4, section 2.

BERTRAM & BERTRAM and JOHN D. CARROLL for appellant.

J. P. HARRISON and F. R. HARRISON for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Mike Jones, a resident of Cincinnati, brought this suit in the Wayne circuit court to recover from E. E. Bell, administrator of J. G. Harvey, deceased, the sum of $2,500.00, it being one-half the purchase price of one-eighth interest in an oil well which had been completed on the Joe Reagan farm in Wayne county, and in 1,523 acres of oil lease on property surrounding the well, which interest Harvey and Jones had sold to F. B. Hough. After the institution of the action, E. E. Bell resigned as administrator, and E. Bertram was appointed in his place. A trial before a jury resulted in a verdict and judgment for Jones, and the administrator has appealed.

The facts as developed by the evidence may be summarized as follows: Harvey was an oil prospector and had been acquiring leases and drilling for oil in different sections of the country. Jones was his friend and supplied him with a large amount of money for this purpose. In the spring of 1919, Harvey acquired the leases out of which this controversy grows. He arranged with six farmers, each of whom owned a part of the land covered by the leases, or adjacent thereto, to put up the sum of $100.00 each for drilling purposes. For this each was to have an undivided one-sixteenth interest in the leases, and transfers were accordingly made, leaving the remaining five-eighths interest in Harvey's name. The first well was drilled on the Joe Reagan farm, and proved to be a good producer. Other wells were drilled and the property, which became known as the Susie Oil Field, turned out to be very valuable. On July 31, 1919, Harvey and Jones, parties of the first part, sold and transferred a one-eighth interest in the property to F. B. Hough. The contract of sale contained the following provisions:

"Said leases are listed and attached to this agreement.

"The payments for the above interests are to be made as follows:

"The sum of $2,000.00 cash is paid to parties of the first part by party of second part, the receipt of which is hereby acknowledged and the balance of $3,000.00 is to be paid the parties of the first part by party of the second part from profits or funds derived from the sale of above mentioned leases or from the sale of oil from the property.

"It is understood and agreed that in case it becomes necessary to assess for funds to drill another well on the property the party of the second part will advance funds to pay said Harvey's assessment and deduct from the $3,000.00 mentioned above."

Aside from this contract, which is shown to have been signed by Harvey, Jones and Hough, Harvey stated to a number of persons that Jones was the best friend a man ever had, and that he had grubstaked him in his prospecting for oil, and was interested with him on a fifty-fifty basis. It was also shown that the entire consideration was either paid to Harvey in person or on assessments due by Harvey for drilling, and that Mike Jones paid his own assessments. There can be no doubt, in view of this evidence, that the liability of Harvey's estate to Jones was properly submitted to the jury.

But the point is made that the petition proceeded on the theory that the money was paid to Harvey under an agreement that he would repay to Jones one-half of it, and that this question was not submitted to the jury. It must not be overlooked that by the terms of the contract the consideration of $5,000.00 was payable to the parties of the first part, that is, one-half to Harvey and one-half to Jones. Therefore, upon proof that Jones and Harvey were joint owners of the property, and that the entire consideration for the transfer to Hough was paid to Harvey, or to others for his benefit, the law implied a promise on the part of Harvey to pay Jones his one-half of the consideration, and it was not necessary either to show an express promise or to submit the question of an express promise to the jury.

Another contention is that Jones, who was a resident of Cincinnati, could not maintain this action against the Kentucky administrator of Harvey's estate because an administrator was appointed in Indiana, where Harvey resided, and had sufficient assets to discharge Jones' claim. In support of this position we are referred to

sections 3898 and 3899, Kentucky Statutes, which are as follows:

"Section 3898. Administration on estate of nonresident decedent; distribution of assets.—When administration shall be taken in this Commonwealth on the estate of any person who was an inhabitant of any other state, his personal estate found here, after payment of his debts to citizens of this Commonwealth, shall be disposed of according to his last will, if he shall have executed any, according to the law of his domicile. If there be no such will, his personal estate shall be distributed and disposed of according to the laws of the state of which he was an inhabitant."

"Section 3899. Settlement of estate of nonresident decedent; distribution of assets.—Upon the settlement of such estate, after the payment of the debts in this Commonwealth, the residue of the personal estate, if any, may be distributed and disposed of in the manner stated in the next preceding section; or it may be transmitted, as the county court may think best and order, to the personal representatives, if there be any in the state where the decedent had his domicile, to be there disposed of according to the law thereof."

It will be observed that these statutes do not in terms deny to a foreign creditor the right to present his claim here to an ancillary administrator of a nonresident decedent, and no such purpose on the part of the legislature will be implied, as such a construction would afford ground for the contention that local creditors were preferred over foreign creditors, in violation of section 2, article 4, of the federal Constitution, and thus raise grave doubts as to the constitutionality of the statutes. Blake v. McClung, 172 U. S. 239, 43 L. Ed. 432; Cravens v. Louisville & N. R. Co., 195 Ky. 257, 242 S. W. 628; United States, ex rel. Atty. Gen. v. Delaware & H. Co., 213 U. S. 366, 53 L. Ed. 836, 848. As the statutes do not forbid, comity would seem to require that the claim be entertained. McKee v. Dodd, 152 Cal. 637, 93 Pac. 854, 125 A. S. R. 82, 14 L. R. A. (N. S.) 780, 11 R. C. L. 443.

Judgment affirmed.